UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PIERRE MITCHELL OUELLETTE,

      Petitioner,

                                        Case No. 5:05-cv-89

v

                                        Hon. Wendell A. Miles

KENNETH T. McKEE, Warden,

      Respondent.

_____/

## OPINION AND ORDER

This matter is before the court on a petition by Michigan prisoner Pierre Mitchell Ouellette for a writ of habeas corpus under 28 U.S.C. § 2254.   The petitioner, who is represented by counsel, challenges his conviction on a charge of criminal sexual conduct in the first degree, in violation of MICH. COMP. LAWS § 750.520b.  Respondent has filed an answer to the petition.  After reviewing the petition, briefs, and underlying record, the court concludes that petitioner is not entitled to habeas relief.

## I

## Background

On July 13, 1999, petitioner was convicted in Michigan's Chippewa County Circuit Court on a charge of first-degree criminal sexual conduct.  The victim of the offense was Kacee Ouellette, the daughter of petitioner's wife Rhonda.   Petitioner had adopted Kacee after he married Rhonda in 1987, when Kacee was approximately 10 years old.  At trial, Kacee – who

was by this time a 21 year-old college student – testified that she was sexually abused by petitioner approximately once per week for years, beginning when Kacee was in the sixth grade and continuing until the time she graduated from high school.

Petitioner and Rhonda became estranged in 1998.  By the time Kacee contacted police about petitioner's alleged abuse, petitioner and Rhonda were involved in divorce proceedings. At trial, the defense's theory of the case was that Kacee Ouellette had recently fabricated these allegations against petitioner in order to help her mother gain an advantage over petitioner in a potential custody dispute involving the estranged couple's younger daughter (and Kacee's half-sister), Skylar.  In support of the theory that Kacee's allegations were false, the defense relied in part on evidence that several years earlier, Kacee had made similar claims that petitioner had sexually abused her – claims that she later told a counselor were untrue.  At the conclusion of the five-day trial, during which petitioner both testified and presented other witnesses in his defense, he was convicted.

After his conviction, petitioner filed a motion for new trial.  A hearing was held on the motion at the time set for sentencing.  Transcript of Motion for New Trial and Sentencing, Aug. 24, 1999.[1]  The trial court denied the motion, and sentenced petitioner to a term of imprisonment of not less than 10 years and not more than 20 years.

Petitioner appealed his conviction to the Michigan Court of Appeals (docket no. 30).  In his brief on appeal, filed by counsel, petitioner raised the following claims:

---

[1]Several pages of the transcript of this hearing, which was filed as part of the Rule 5 materials (docket no. 28), are missing.  However, neither party argues that any of the missing pages are material to the issues raised in the petition.

I.      Petitioner was denied a fair trial and due process of law by
        repeated instances of prosecutorial misconduct, which included
        vouching for the credibility of the victim, shifting the burden of
        proof in his closing argument, arguing facts not in evidence, and
        appealing to the sympathy of the jury.

II.     The prosecutor erred when he introduced evidence of unrelated
        sexual incidents with other victims without filing a *VanderVliet*
        motion under MICH. R. EVID. 404(b),[2] denying petitioner his due
        process right to a fair trial and his Sixth Amendment right to
        confrontation.

III.    The trial court erred in failing to enforce discovery rules despite a
        discovery request and discovery order, denying petitioner his due
        process right to a fair trial and Sixth Amendment right to
        confrontation.

IV.     The trial court erred by admitting hearsay testimony, which
        prejudicially bolstered the victim's testimony in a case which was
        a close credibility contest, denying petitioner his due process right
        to a fair trial.

V.      The trial court erred in denying petitioner's motion for a new trial.

The Michigan Court of Appeals affirmed petitioner's conviction.  People v. Ouellette, No.

222611, 2001 WL 733196 (Mich. Ct. App.  June 8, 2001).

        Petitioner then filed a *pro se* delayed application for leave to appeal in the Michigan

---

        [2]In People v. VanderVliet, 508 N.W.2d 114, 117 (Mich.1993), amended by 520 N.W.2d
338 (Mich. 1994), the Michigan Supreme Court set forth the following test for determining
whether other sexual acts evidence is admissible in a criminal sexual conduct trial: (1) the
evidence must be offered for a purpose allowed under MICH. R. EVID. 404(b); the evidence must
be relevant under MICH. R. EVID. 402; and (3) the evidence's probative value may not be
substantially outweighed by its unfair prejudice.  The court in that case also construed
Michigan's Rule 404(b) as imposing a notice requirement which obligates the prosecution to
give pretrial notice of its intent to introduce other acts evidence at trial.  VanderVliet, 508
N.W.2d at 133.  The purpose of pretrial notice is to protect a defendant from unfair surprise and
to give the defendant an opportunity to marshal arguments regarding relevancy and unfair
prejudice.  Id. at 133 n. 51.

Supreme Court (docket no. 31).  His application raised the same claims which had been raised in

the Michigan Court of Appeals, in addition to the following "new" issues:

>   I.   Petitioner was denied effective assistance of counsel on appeal and
>        during the trial court proceedings, as several of his valid appellate
>        issues were not preserved for appellate review because his trial
>        counsel failed to either properly object or assert the proper basis
>        for objection.
>
>   II.  Notes of counseling sessions in which the victim participated,
>        indicating that she had previously made false allegations of abuse,
>        were admitted but were illegible and therefore could not be read by
>        the jury.

The Michigan Supreme Court denied petitioner's application, indicating that it was "not

persuaded that the questions presented should be reviewed by this Court."  Order,  People v.

Ouellette, No. 119791, 465 Mich. 958 (March 4, 2002).

Petitioner then filed a motion for post-conviction relief in the trial court under M.C.R.

6.502 (docket no. 32).  In his motion, filed by counsel, petitioner raised the following claims:

>   I.    Petitioner's state and federal constitutional rights to due process
>         and a fair trial were denied when the prosecutor repeatedly and
>         intentionally attempted to inject inadmissible other acts evidence
>         into the trial.
>
>   II.   Petitioner's state and federal constitutional rights to due process
>         and a fair trial were denied by the prosecutor's improper
>         arguments.
>
>   III.  Petitioner was denied due process of law when the prosecutor
>         failed to disclose impeachment evidence to the defense.
>
>   IV.   The trial court's improper questioning and comments during trial
>         denied petitioner his constitutional right to a fair and impartial

trial.

V.      Petitioner was denied his constitutional right to a fair and impartial trial when comments by prospective jurors tainted the jury pool.

VI.     Petitioner was denied his constitutional right to the effective assistance of trial counsel.

VII.    Petitioner was denied his constitutional right to the effective assistance of appellate counsel.

VIII.   The trial court erred by amending the judgment of sentence.

The trial court held a hearing on petitioner's motion, during which petitioner presented the testimony of his trial counsel.  Transcript of Defendant's Motion for Relief from Judgment, Jan. 26, 2004 (docket no. 29).  Although the trial court denied petitioner's motion on all issues raised with respect to his conviction, it did amend the judgment of sentence by indicating the date the sentence was to begin and by giving petitioner credit for 47 days of time served.  Order, No. 98-6670-FC (Chippewa County Cir. Ct. February 10, 2004).

Petitioner then filed an application for leave to appeal the partial denial of his motion for relief from judgment in the Michigan Court of Appeals.  That court denied his application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  Memorandum of Law in Support of Petition, Exhibit 11.  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied because petitioner had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  People v. Ouellette, 472 Mich. 914 (May 31, 2005).  Petitioner filed his habeas petition in this court on June 9, 2005.

5

## II

### Standard of Review

Title 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has explained that

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-413 (2000).  "Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly."  Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).  "The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."  Id. at

27.

The statutory phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the United States Supreme Courts'] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them. Early v. Packer, 537 U.S. 3, 8 (2002). Instead, it is sufficient that the result and reasoning are consistent with Supreme Court precedent. Id. Moreover, a state court "does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent; it may hold a view that is different from this court or another federal court." Slagle v. Bagley, 457 F.3d 501, 514 (6th Cir. 2006) (citing Mitchell v. Esparza, 540 U.S. 12, 17 (2003)).

Federal law also requires considerable deference to findings of fact made by the state courts. Johnson v. Luoma, 425 F.3d 318, 324 (6th Cir. 2005). "[S]tate findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." Baze v. Parker, 371 F.3d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).


## III

## Discussion of Claims

Petitioner seeks the issuance of a writ of habeas corpus on the following grounds:

1. Petitioner's constitutional rights to due process and a fair trial were denied when the prosecutor repeatedly and intentionally attempted to inject inadmissible "other acts" evidence into the trial.

2.      Petitioner's constitutional rights to due process and a fair trial were denied by the prosecutor's improper arguments.

3.      Petitioner was denied due process of law when the prosecutor failed to disclose impeachment evidence to the defense.

4.      The trial court's improper questioning and comments during trial denied petitioner his constitutional right to a fair and impartial trial.

5.      Petitioner was denied his constitutional right to a fair and impartial trial when comments by prospective jurors tainted the jury pool.

6.      Petitioner was denied his constitutional right to the effective assistance of trial counsel.

7.      Petitioner was denied his constitutional right to the effective assistance of appellate counsel.

### A.  **Claims 1 through 3:  Prosecutorial Misconduct**

Petitioner's first three claims assert instances of prosecutorial misconduct which operated to violate his right to due process.  First, petitioner contends that the prosecutor repeatedly and intentionally attempted to inject inadmissible "other acts" evidence into the trial.  Second, he contends that the prosecutor made improper arguments which vouched for, bolstered the credibility of, and elicited sympathy for the victim, Kacee Ouellette.  Third, petitioner contends that the prosecutor failed to disclose impeachment evidence to the defense.

### 1.  **Procedural Default**

Before reaching the merits of petitioner's claims of prosecutorial misconduct and whether they provide a basis for granting the writ, the court must determine whether the claims have been procedurally defaulted.  The respondent argues that the claims are procedurally defaulted as a

matter of law, insofar as petitioner failed to object to the alleged instances of misconduct at trial.

"In general, a federal court may not consider a claim for habeas corpus relief if the claim was procedurally defaulted in state court- *i.e.*, if the last state court to render a judgment in the case rejected the claim because it was not presented in accordance with the state's procedural rules." Hargrave-Thomas v. Yukins, 374 F.3d 383, 387 (6th Cir.2004). "When a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated analysis." Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." Id. "Second, the court must decide whether the state courts actually enforced the state procedural sanction." Id. "Third, the court must decide whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." Id.

If these factors are satisfied, a petitioner can overcome the procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson 501 U.S. 722, 750 (1991). "Cause" for default requires a showing that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel can constitute cause, so long as the ineffective assistance of counsel claim is not itself procedurally defaulted. Id. at 489; see also Edwards v. Carpenter, 529 U.S. 446, 453 (2000) ("an ineffective-assistance-of-counsel claim asserted as cause for the

9

procedural default of another claim can itself be procedurally defaulted").  "Prejudice," on the other hand, requires a showing that the errors at trial "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Additionally, under the miscarriage-of-justice exception, the court may consider an otherwise defaulted claim if it concludes that the petitioner has shown that the "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (quoting Murray, 477 U.S. at 496).

In order for a procedural default to bar federal review of a claim, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." Simpson v. Jones, 238 F.3d 399, 406 (6th Cir. 2000).  "A procedural default analysis, then, is two-fold: the federal court must determine if a petitioner failed to comply with a state procedural rule; and it also must analyze whether the state court based its decision on the state procedural rule."  Id.  For purposes of procedural default, the "state judgment" with which the court is concerned is "the last explained state court judgment."  Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991).

Here, the last explained state court judgment is the Michigan Supreme Court's order denying review of petitioner's claims based upon his "fail[ure] to meet the burden of establishing entitlement to relief under MCR 6.508(D)."[3]   The Sixth Circuit has held that orders such as that

---

[3]Rule 6.508(D) provides as follows:

Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(continued...)

[3](...continued)

  (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

  (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

  (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

    (a) good cause for failure to raise such grounds on appeal or in the prior motion, and

    (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,

      (I) in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal;

      (ii) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;

      (iii) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case;

      (iv) in the case of a challenge to the sentence, the sentence is invalid.

The court may waive the "good cause" requirement of subrule

          (continued...)

issued by the Michigan Supreme Court constitute "explained" state court judgments for purposes of procedural default.  Munson v. Kapture, 384 F.3d 310, 314 (6th Cir. 2004) (citing Simpson, 238 F.3d at 407-08).  "It is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims."  Munson, 384 F.3d at 315 (citations omitted); see also Ivory v. Jackson, 509 F.3d 284, 291-293 (6th Cir. 2007) (where petitioner failed to raise ineffective-assistance-of-trial-counsel claim on direct appeal, Michigan appellate courts' one-sentence orders stating that petitioner  "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)" constituted orders based on an independent and adequate state procedural rule).

Having determined that petitioner's claims of prosecutorial misconduct have been procedurally defaulted, the court must next consider whether he has established the requisite "cause" and "prejudice" to permit consideration of the merits of his claims.  Id.  Here, petitioner asserts constitutionally ineffective assistance of counsel as cause for his procedural default of this claim.   However, as noted above, the ineffective assistance claim asserted as cause for the procedural default of a claim must not itself have been procedurally defaulted.  Edwards, 529 U.S. at 453.  "To constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted."

---

[3](...continued)
     (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

Burroughs v. Makowski, 411 F.3d 665, 668 (6th Cir. 2005).[4]

As the court has noted in Part I of this decision above, petitioner has asserted claims of ineffective assistance of both trial and appellate counsel.  Therefore, the question becomes whether these claims are both exhausted and not procedurally defaulted.  In his motion for relief from judgment filed in the trial court, petitioner claimed, among other things, that trial counsel was constitutionally ineffective for several reasons, including her failure to object to several instances of prosecutorial misconduct and move for a mistrial.  In his motion, petitioner also claimed that appellate counsel was constitutionally ineffective for various reasons.   Therefore, these claims are exhausted.

However, although these claims are exhausted, they are procedurally defaulted.  Petitioner did not assert a claim of ineffective assistance of trial counsel on direct appeal, even though he was represented by different counsel on direct appeal to the Michigan Court of Appeals.  Instead, petitioner did not assert such claim of ineffective assistance of trial counsel until he filed a Supplemental Delayed Brief in the Michigan Supreme Court.  Even then, petitioner did not specifically contend that trial counsel was ineffective for failing to object to prosecutorial misconduct.  In addition, petitioner simply made vague allegations of ineffective assistance of appellate counsel, without identifying prosecutorial misconduct issues as a basis for his claims of ineffective appellate counsel.  Therefore, petitioner's claims of ineffective assistance of trial and appellate counsel are procedurally defaulted on the issue of prosecutorial

---

[4]Ironically, in order to determine whether cause exists for the procedural default of a claim of ineffective assistance of counsel, the court must consider the merits of that claim.  Willis v. Smith, 351 F.3d 741, 745 (6th Cir. 2003).  The court discusses the merits of petitioner's claims of ineffective assistance of counsel in Part III.C of this decision below.

misconduct, and petitioner has not demonstrated cause for this procedural default.  Petitioner's failure to establish cause to excuse his default eliminates the need to consider prejudice.  See Murray, 477 U.S. at 494 (1986) ("both cause and prejudice must be shown, at least in a habeas corpus proceeding challenging a state court conviction").  Under the circumstances, the court also need not consider the merits of petitioner's claims of prosecutorial misconduct.

The remaining question is whether the court's failure to consider the substantive merits of the defaulted claim of prosecutorial misconduct will result in a miscarriage of justice.  Under the miscarriage-of-justice exception, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  House v. Bell, 547 U.S. 518, 537 (2006) (quoting Schlup, 513 U.S. at 327).   This rule ensures that the petitioner's case is truly "extraordinary," while providing a meaningful avenue by which to avoid manifest injustice. Id.

Here, petitioner has not claimed that new, reliable evidence not presented at trial establishes his innocence.  Therefore, this is not a case where new evidence raises doubts about petitioner's guilt, and petitioner cannot overcome his procedural default on his claims of prosecutorial misconduct.

**B.  Claims 4 and 5:  Comments by Trial Judge and Prospective Jurors**

In his fourth claim, petitioner argues that the trial judge violated his Sixth Amendment right to an impartial jury trial by (1) asking Kacee Ouellette whether her mother believed her allegations against petitioner, and (2) making comments regarding parental visitation granted to

14

petitioner in custody proceedings involving Skylar Ouellette.  In his fifth claim, petitioner argues that his Sixth Amendment right to an impartial jury was also violated when, during voir dire, several prospective jurors made certain comments about sexual abuse cases.  The respondent argues that these claims do not provide a basis for granting the petition because the claims are procedurally defaulted as a matter of law based on petitioner's failure to raise them in his direct appeal.

As noted above, federal habeas review is barred where a state court has declined to address a petitioner's federal claims because the prisoner failed to meet state procedural requirements.  As also noted above, the Michigan appellate courts denied petitioner relief because he failed to establish entitlement to relief under M.C.R. 6.508(D), which constitutes invocation of a state procedural bar.  Therefore, this court may not review petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider this claim will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-750.

Petitioner could establish ineffective assistance of counsel as cause for his procedural default.  Id. at 754.  However, as noted above, petitioner did not raise a claim of ineffective assistance of counsel in the state courts until he filed his *pro se* Supplemental Delayed Brief in the Michigan Supreme Court.  Even in that brief, he did not mention trial counsel's handling of either the comments made by the trial judge during trial or those made by prospective jurors during voir dire.  In addition, petitioner made no mention of appellate counsel's failure to raise these issues on appeal.   A claim has not been fairly presented to state courts if the petitioner has asserted a factually dissimilar claim based on the same legal theory.  See Lott v. Coyle, 261 F.3d

594, 618-619 (6th Cir. 2001) (presentation of claim in state court based on <u>Brady v. Maryland</u>,

373 U.S. 83 (1963) related to fingerprint issue did not permit petitioner to assert other <u>Brady</u>

claims predicated on factually dissimilar premises).  Therefore, petitioner's claims of ineffective

assistance of trial and appellate counsel are procedurally defaulted on both of these issues, and

petitioner has not demonstrated cause for this procedural default.  Once again, petitioner's failure

to establish cause to excuse his default eliminates the need to consider prejudice, <u>see</u> <u>Murray</u>,

477 U.S. at 494, and prevents the court from considering the merits of petitioner's claims.

 However, even assuming that petitioner could establish cause for his procedural default,

petitioner cannot establish prejudice resulting from these alleged errors because his claims are

not meritorious.

 Petitioner has not cited for the court any United States Supreme Court precedent which

he contends provides the clearly established law supporting his claim that the trial court's

questions and/or comments operated to deprive him of his right to fair and impartial trial.  It is

not even apparent why he bases this claim on the Sixth Amendment.[5]  In support of his claim,

petitioner points to only two instances of alleged improper conduct by the trial judge: (1) when

the trial judge asked Kacee Ouellette, on re-direct, whether her mother believed Kacee's

previous allegations of abuse made against petitioner several years earlier, and (2) when, after

---

[5]In his brief in support of the petition, the sole case on which petitioner relies for his claim that judicial bias deprived him of a fair trial is <u>Maurino v. Johnson</u>, 210 F.3d 638 (6th Cir. 2000), in which the court affirmed a district court's decision denying habeas relief on a claim that the trial court's animosity toward defense counsel violated petitioner's Sixth Amendment right to counsel.  <u>Id</u>. at 645-646.  <u>Maurino</u> itself cites <u>Liteky v. United States</u>, 510 U.S. 540 (1994), which addresses the standard for recusal of federal judges under 28 U.S.C. § 455.  <u>But see</u> <u>Lyell v. Renico</u>, 470 F.3d 1177, 1186 (6th Cir. 2006) ("this court has relied on [<u>Liteky</u>] in assessing judicial bias claims under the Due Process clause").  Neither <u>Maurino</u> nor <u>Liteky</u> supports a grant of the writ in this case.

16

the conclusion of petitioner's testimony on direct examination, the trial judge made a comment about the divorce proceeding between petitioner and Rhonda Ouellette.

The trial judge's question to Kacee appeared to be directed to exploring her possible motivation for recanting the initial allegations which she had made against petitioner several years earlier.  The judge asked Kacee, "did you get the impression that your mother believed you or did not believe you?"  Transcript of Jury Trial, July 7, 1999, Vol. II at 274.  Kacee answered that "[a]t that point I got the impression she never did believe me."  Id.  The judge repeated, "she did not believe you[,]" and proceeded to clarify that he "just thought [Kacee] might explain to the jury why all of this occurred."  Id.

The trial judge's comments regarding the divorce proceeding are far lengthier.  On direct examination, petitioner testified that after he filed for divorce from Rhonda in June, 1998, a hearing was held on custody and visitation of Skylar, after which he received "standard" visitation with Skylar even though the referee who presided over the hearing was informed that petitioner might be facing charges of criminal sexual conduct.  Transcript of Jury Trial, July 8, 1999, Vol. III at 482-485.  During petitioner's testimony, defense counsel successfully moved, without objection, for the admission of what was apparently the court order establishing the visitation.  Id. at 484-485.  After the conclusion of petitioner's direct examination by his counsel, but before the beginning of cross-examination, the trial judge made the following remarks:

> [B]efore we proceed maybe I should just explain what a referee hearing is.  A referee hearing is scheduled on a domestic relations matter to expedite the cases so things maybe can be resolved before they actually get to the courtroom and have a complete hearing on them.  So a referee hearing is scheduled.  So many times they are 15, 20 minute sessions per case.  We have 10, 20 cases scheduled on those days.
>     The referee hearing it makes some determinations [sic], whether it's

17

custody, support or what have you.  And people aren't necessarily put under oath and testimony is not usually taken.  There are statements made by the attorneys, maybe the referee will have a question, and in 15 or 20 minutes will make some determination as to what should be done.

If the parties don't agree on that, the referee's recommendation, one side or the other has an opportunity to object.  If no one objects it becomes the order of the Court because there is no objection to it.  So in this case if Mr. Ouellette got a visitation order for parenting time and Mrs. Ouellette does not object, then it becomes the order of the Court.

I don't think we should leave the jury with the impression that there was an adjudication on the merits of the particular domestic relations matter whereby some Court has made some determination that Mr. Ouellette is in some way, in this particular setting, vindicated or something has been adjudicated that is being adjudicated here as well.  That is not what a referee hearing is.

The parties appear with their attorneys.  If the parties agree that is fine, if not, the referee makes a recommendation after 15 or 20 minutes, and if no one objects it becomes the order of the Court.  I don't want the jury to believe in the civil arena these allegations of sexual abuse have been brought on, adjudicated on the merits, or a decision made by a Court in a civil forum.  It was not.  You should not be left with that impression.

Obviously, Mr. Ouellette obtained visitation, parenting time, therefore, it is as it is.  I don't want to leave the impression that's what referees do.

Id. at 490-492.  Defense counsel did not object to the judge's comments.  Instead, after asking if she could "follow up just a little bit," defense counsel asked petitioner whether Rhonda agreed to the visitation of Skylar, to which petitioner responded affirmatively.  Id. at 492.   Petitioner now argues that the "net effect" the judge's questions and comments "was to bolster the credibility of the complainant, while attacking the strength of the Petitioner's case."  Petitioner's Memorandum of Law in Support of Petition at 24.

The applicable law, which has not been cited by petitioner in his brief in support of the petition, generally provides that "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' . . . before a judge with no actual bias against the defendant or interest in the outcome of his particular case."  Bracy v. Gramley, 520 U.S. 899, 905 (1997) (citations omitted).

"Fairness of course requires an absence of actual bias in the trial of cases[,] [b]ut our system of law has always endeavored to prevent even the probability of unfairness." In re Murchison, 349 U.S. 133, 136 (1955).  At the same time, however, "[t]here is no general prohibition against a trial court commenting upon the evidence." McBee v. Grant, 763 F.2d 811, 817 (6th Cir. 1985). More specifically, [i]t is within [the trial judge's] province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." Quercia v. United States, 289 U.S. 466, 469 (1933).  "In collateral proceedings, the test is 'whether the errors alleged ... could have rendered [the] trial fundamentally unfair.'" McBee, 763 F.2d at 818 (citation omitted).  "To violate a defendant's right to a fair trial, 'a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree.'" Id. (citation omitted).

The questioning and comments by the trial judge in this case do not demonstrate prejudice, much less prejudice of such a degree as to have fundamentally impacted the fairness of the entire trial.  The judge did not in any respect bolster Kacee Ouellette's credibility, nor did he disparage either petitioner or his defense.  Moreover, the judge did not intimate any view on the merits of the case, and the record certainly does not reflect any personal animus toward petitioner himself or any bias in favor of the prosecution.  In fact, the judge specifically instructed the jury at the beginning of the trial that even though "I may ask some of the witnesses questions myself[,] [t]hese questions are not meant to reflect any personal opinion I have about

the evidence.  If I do ask questions, my only reason would be to ask about things that may not have been fully explored during the trial."  Transcript of Jury Trial, July 6, 1999, Vol. I at 189. In addition, petitioner has supplied nothing from which one could conclude that, under the well established law in Supreme Court cases, the cited instances of judicial conduct resulted in actual prejudice to the defense so as to violate due process, and he certainly has not supported a claim based on the Sixth Amendment.  Accordingly, petitioner would not be entitled to habeas relief on this claim even if it was not procedurally defaulted.

Petitioner's fifth claim fares no better.  For this claim, petitioner argues that his Sixth Amendment right to an impartial jury was also violated when, during voir dire, several prospective jurors made certain comments about sexual abuse cases.  The specific comments about which petitioner complains include the following:

> ". . . I feel everyone is guilty.  If this has been going on, as I understand, since the '80's up until the '90's, the parents, the victim, they're all guilty."  (Transcript of Jury Trial, July 6, 1999, Vol. I at 21)

> "I think that even though I think I could listen to everything or be fair and impartial as I can, I think I would still have a tendency to lean toward the accuser."  (Id. at 75)

> "I think something [wrong] happened to get him here."  (Id. at 153)

> "I probably do feel a little uncomfortable.  I have two daughters myself."  (Id. at 26)

Petitioner also refers generally to "six jurors" who responded that they would have a "problem sitting on a CSC case."   Memorandum of Law in Support of Petition at 24.  Most of these potential jurors were excused either for cause or through use of peremptory challenges, although petitioner argues that one of these persons – the man who said he felt "a little uncomfortable" –

was selected for the jury.  Although petitioner concedes that each individual comment by the prospective jurors was not likely to have a strong effect on the entire jury pool, he argues that "the sheer number and frequency of the comments during voir dire no less 'infected' the entire jury pool" than in the Ninth Circuit case of <u>Mach v. Stewart</u>, 137 F.3d 630 (9th Cir. 1997). Memorandum of Law in Support of Petition at 25.

In <u>Mach</u>, the petitioner was also accused of sexually assaulting a minor.  The trial judge elicited from a potential juror, during voir dire, that the woman had the "expertise" of having taken child psychology courses and worked with psychologists and psychiatrists, in addition to having worked with children as a social worker for the state.  The trial court also managed to elicit several statements from the woman indicating, in effect, that children never lie about sexual abuse.  The judge asked the other jurors whether anyone disagreed, and no one responded. 137 F.3d at 632-633.  The defendant unsuccessfully moved for a mistrial.  After the district court denied habeas relief, the Ninth Circuit reversed, holding that given the nature of the statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times that they were repeated, "we presume that at least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about being sexually abused." <u>Id</u>. at 633.  According to the court, this bias violated the petitioner's Sixth Amendment right to an unbiased jury.  <u>Id</u>. at 634.

"In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961).  "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. . . .  To hold that the mere existence of any preconceived notion as to the guilt or innocence of an

accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." Id. at 722-723.   As the Supreme Court has explained, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable." Smith v. Phillips,  455 U.S. 209, 217 (1982).  "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin, 366 U.S. at 723.  Moreover, any claim that a jury was not impartial must focus only on the jurors who ultimately sat on the case, not on those who were excused.  Ross v. Oklahoma, 487 U.S. 81, 86 (1988).

Petitioner's reliance on Mach is misplaced.  Because Mach is not a Supreme Court precedent, under the applicable standards the holding of that case would not entitle petitioner to habeas relief.  Only Supreme Court case law is relevant in examining what federal law is "clearly established."  Although the decisions of federal appellate courts may be informative to the extent they have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right has been clearly established by the Supreme Court, Hill v. Hofbauer, 337 F.3d 706, 716 (6th Cir. 2003), Mach contains no such analysis.  In addition, Mach was, notably, filed before the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), became law.  Mach, 137 F.3d at 631 n.1.

However, even if Mach provided the clearly established applicable federal law which this court was required to follow, the facts of that case are a far cry from those of this case, which involves not the supposed "expertise" of any particular potential juror, but instead simply candid expressions of preconceived leanings toward one side or the other.  However, jurors are

22

presumed to be impartial.  See  Irvin, 366 U.S. at 723.  As the Sixth Circuit has explained, "[t]he category of cases where prejudice has been presumed in the face of juror attestation to the contrary is extremely narrow.  Indeed, the few cases in which the Court has presumed prejudice can only be termed extraordinary[.]"  DeLisle v. Rivers  161 F.3d 370, 382 (6th Cir. 1998).  It is telling that petitioner's counsel never moved to strike the panel, just as it is telling, as the Sixth Circuit has observed, that Mach appears to be alone in holding that general comments by potential jurors not directly related to the defendant operate to taint an entire jury panel.

In United States v. Guzman, 450 F.3d 627, 631 (6th Cir. 2006), the court, referring to Mach, noted that it had "found only one case where comments by potential jurors not directly related to the defendant at bar rose to the level of presumed prejudicial error, and it bears no resemblance to the facts in this case" (footnote omitted).  In Guzman, the Sixth Circuit also noted that adoption of a per se rule that a venireperson's comments taint the entire panel "would effectively require in camera voir dire of every potential juror in every criminal case .... to prevent the risk of complete venire contamination from innocent, extraneous remarks."  450 F.3d at 632.  The Sixth Circuit has also characterized as "very tenuous" the concept that a trial judge has a "sua sponte duty to discharge the entire jury panel, even in the absence of a defense motion to that effect."  Reynolds v. Bagley, 498 F.3d 549, 556 (6th Cir. 2007).  Although the court in Bagley recognized that a "hypothetical" situation might arise "in which a single venire-member's comments, prior to his dismissal, might irreparably prejudice the remaining veniremembers against the defendant," the court held that the facts of Bagley – involving a police officer venire member who expressed a very favorable view of the prosecutor – did not approach that hypothetical.  Id.

In this case, the trial judge gave both sides a great deal of leeway in examining the potential jurors.  The judge was not obligated to question each panel member individually or to give any specific instructions regarding the other panel members' comments, especially in the absence of any specific request by petitioner's trial counsel.  Notably, petitioner's trial counsel expressly informed the court that the defense was "pleased and satisfied" with the jury. Transcript of Jury Trial, July 6, 1999, Vol. I at 183.  Under the circumstances, petitioner's tainted venire claim has no merit, even if was not procedurally defaulted.[6]

## C.  Claims 6 and 7:  Ineffective Assistance of Trial and Appellate Counsel

Petitioner claims that his trial counsel rendered constitutionally ineffective assistance in a number of respects.  First, he contends that trial counsel was ineffective in failing to call as a witness Paul Knuckman, the counselor whom Kacee Ouellette saw when she first made and recanted allegations of sexual abuse against petitioner years before the charge at issue was filed. Second, petitioner contends that trial counsel was ineffective for failing to object to several instances of alleged prosecutorial misconduct and for failing to move for a mistrial.  Third, petitioner contends that trial counsel was ineffective in failing to "rehabilitate" petitioner's testimony after cross-examination.  Fourth, petitioner contends that trial counsel was ineffective in failing to move for a mistrial after the venire became "tainted" during voir dire.  And finally, petitioner also claims that his appellate counsel rendered constitutionally ineffective assistance in a number of respects, which include (1) failing to raise a claim of ineffective assistance of trial

---

[6]Because the claims of judicial bias and a tainted venire have no merit, petitioner's trial counsel could not have been ineffective in failing to object or move for a mistrial, and appellate counsel could not have been ineffective in failing to raise these issues on appeal.

counsel; (2) failing to raise issues on appeal regarding jury selection and the trial judge's allegedly improper comments; and (3) failing to request oral argument.

To prevail on a claim of ineffective assistance of counsel, the petitioner must satisfy two requirements.  First, he must demonstrate that his counsel's performance was constitutionally deficient, i.e., that it fell below an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. 668, 687-688 (1984).  Second, the petitioner must "affirmatively prove prejudice."  Id. at 693.   This requires him to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "The test for determining ineffective assistance of appellate counsel is the same as the test for ineffective assistance of trial counsel."  Wilson v. Hurley, 108 Fed. Appx. 375, 377, 2004 WL 1941300, *2 (6th Cir. 2004).

With respect to petitioner's claims of ineffective assistance of trial counsel, the respondent argues that petitioner has failed to establish that counsel's strategic decisions amounted to constitutionally deficient performance.  With respect to petitioner's claims of ineffective assistance of appellate counsel, the respondent argues that strategic decisions not to raise every non-frivolous issue on appeal does not provide a basis for habeas relief, and, in any event, petitioner has not shown that the failure to raise the defaulted claims on appeal resulted in actual prejudice or fundamental unfairness.   The respondent also argues that petitioner cannot show that the state court's conclusion on his claims was contrary to, or an unreasonable application of, federal law.

## 1.  **Trial counsel**

"[A]s a general rule, trial counsel's strategic decisions on how the trial is to be conducted are afforded great deference."  Ege v. Yukins, 485 F.3d 364, 378 (6th Cir. 2007).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689.[7] "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. (citation omitted). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.

A habeas petitioner must first show that his counsel's performance was objectively unreasonable, and then – if he succeeds in such a showing, he has the burden of demonstrating prejudice.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  However, the performance component need not always be addressed first.  Id. at 286 n.14.  "'If it is easier to dispose of an

---

[7]As will be noted in Part II.C.2 below, however, the prejudice determination, unlike the performance determination, may be made with the benefit of hindsight. See Lockhart v. Fretwell, 506 U.S. 364, 371-372 (1993) (in Strickland, "[w]e adopted the rule of contemporary assessment of counsel's conduct because a more rigid requirement 'could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.' ... But the 'prejudice' component of the Strickland test does not implicate these concerns. It focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. ... Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him").

ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed.'" Id. (quoting Strickland, 466 U.S., at 697).

### a.  Failure to call Paul Knuckman as a witness

Petitioner first argues that his trial counsel's performance was deficient because she introduced records from Kacee's counseling sessions with counselor Paul Knuckman, without calling Knuckman as a witness for the defense.  Although defense counsel introduced into evidence notes from Knuckman's treatment of Kacee, these notes are largely illegible. Therefore, petitioner concludes, Knuckman's testimony "would have been crucial in helping the jury understand [Kacee's] behavior in making false accusations against Petitioner in the past." Memorandum of Law in Support of Petition at 26.

In support of his position that his trial counsel performed unreasonably in not procuring Knuckman's testimony, petitioner relies on the fact that during a post-trial hearing, counsel did not articulate any strategic reasons for not calling Kacee's former counselor to testify.  However, although it is a true statement that counsel did not attribute her failure to call Knuckman to strategy, counsel did provide another reason for not calling him.  Specifically, during a hearing held on petitioner's motion for relief from judgment, his trial attorney, Eva Kipper, testified that the only reason why she did not call Knuckman to testify was that she could not find him. Transcript of Defendant's Motion for Relief from Judgment, January 26, 2004 (docket no. 29) at 10.  Petitioner has not pointed to any evidence indicating that Kipper failed to make reasonable efforts to find Knuckman.  Under the circumstances, it is not possible to conclude, based on the record, that Kipper's performance was deficient.

However, even if petitioner had established that Kipper committed an error in not securing Knuckman's testimony, he has failed to show the required prejudice. On cross-examination, Kipper admitted that Knuckman's notes merely confirmed what Kacee had already admitted during her own testimony: that she had recanted her earlier allegations against petitioner. Moreover, there is no evidence that petitioner, who was represented by counsel in pursuing his motion for relief from judgment, ever sought to locate Knuckman for the purpose of explaining the contents of the notes. Therefore, petitioner has not demonstrated that any error by his trial counsel in failing to secure Knuckman's testimony at trial was sufficient to undermine confidence in the trial's outcome.

### b. <u>Failure to object to prosecutor's actions or move for mistrial</u>

Petitioner next argues that his trial counsel's performance was deficient because she failed to object to several instances of alleged prosecutorial misconduct or move for a mistrial. These instances of alleged misconduct by the prosecutor consist of what petitioner argues were repeated attempts to elicit evidence or make comments regarding petitioner's sexual abuse of girls other than Kacee. Petitioner contends that because the case involved a credibility contest between himself and Kacee, the jury's exposure to other accusations of sexual abuse against him likely influenced the outcome of the trial.

Trial counsel's failure to object to allegedly improper statements could have been a product of trial strategy. Petitioner has not pointed to evidence that counsel was unaware of the prosecutor's actions, and given what petitioner contends was a pretrial ruling excluding "other acts" evidence, it is likely that counsel would have been alert to any violation of this alleged

ruling.  Moreover, it is also possible that counsel believed that objecting to the prosecutor's questions or remarks would have only underscored their significance in the eyes of the jury. Under the circumstances, it is not possible to conclude that trial counsel's failure to object to every instance of alleged improper conduct by the prosecutor constituted deficient performance.

Petitioner's claim of ineffective assistance based on trial counsel's failure to move for a mistrial is likewise deficient.  Once again, because the record does not indicate that trial counsel was unaware of the prosecutor's actions, there is no evidence that her decision not to move for a mistrial was not a tactical one.  There is, in fact, evidence which unquestionably indicates that the decision not to seek a mistrial was tactical.  Specifically, attorney Kipper testified at the hearing on petitioner's motion for relief from judgment that she did not move for a mistrial based on the prosecutor's reference to "other acts" evidence because she feared that if a new trial was scheduled, the prosecutor would simply use the opportunity to provide notice of his intent to use the evidence, thus thwarting petitioner's basis for objecting to the evidence.   Transcript of Petitioner's Motion for Relief from Judgment, January 26, 2004 (docket no. 29) at 9.  The desire to avoid the risk of a second trial which could involve additional evidence against the client  is a sufficient basis on which to conclude that counsel's actions were within the range of reasonable professional assistance.  See West v. Seabold, 73 F.3d 81, 85 (6th Cir. 1996) ("Although the egregious conduct of the prosecutor would be cause for concern to counsel," a competent attorney might conclude "that a declaration of a mistrial would only force the petitioner to endure the expense of a second trial with the added risk that the state, with full knowledge of the defense's case and with a more accomplished prosecutor, would present its case more forcefully and effectively and heighten the chance of conviction or increase the length of the probable

29

sentence").

Courts have recognized that the decision not to seek a mistrial or new trial may be a strategic one.  See, e.g., Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005) (where trial counsel's decision not to seek mistrial was based on deliberate strategy, that decision, "while debatable, was not objectively unreasonable"); United States v. Moran  393 F.3d 1, 10 (1st Cir. 2004) ("There are both tactical and strategic reasons why a party might seek a judgment of acquittal but not a new trial (for example, a fear that the prosecution will learn from its mistakes and put in a more persuasive case the second time around . . . "); United States v. Hemphill, 76 Fed. Appx. 6, 16, 2003 WL 21872509, *7 (6th Cir. 2003) (finding absence of plain error based on failure to move for mistrial or to strike testimony based on gratuitous "other acts" statements by government witnesses, where  "defendant's counsel may have decided to forego a motion for mistrial because, as a strategic decision, he preferred to test the government's case with the jury that was impaneled or may not have wished to emphasize the gratuitous commentary by a motion to strike") (footnote omitted); United States v. Washington, 198 F.3d 721, 723 (8th Cir. 1999) ("ultimate decision on whether to request a mistrial . . . is a strategic decision for counsel"); see also Lee v. United States, 432 U.S. 23, 32 (1977) (noting that it has been recognized that whether to seek mistrial based on prejudicial error committed by the court or prosecutor "generally presents the defendant with a 'Hobson's choice'").   In particular here, given counsel's testimony that she considered that the prosecutor might be able to make full use of "other acts" testimony in the event of a retrial, petitioner simply cannot overcome the presumption that counsel's decision fell within the wide range of reasonable professional assistance that could be considered sound  strategy.  Because petitioner cannot show that his

counsel's performance in this regard was constitutionally deficient, this particular claim affords him no basis for relief.

### c.  Failure to "rehabilitate" petitioner on redirect

Petitioner further argues that his trial counsel's performance was deficient because she failed to "rehabilitate" petitioner's testimony on re-direct examination.   On cross-examination, the prosecutor asked petitioner whether a detective had correctly reported that during a conversation with petitioner, the latter had twice asked "if [I] was involved in the allegations what would [the detective] be able to do[.]" Transcript of Jury Trial, July 8, 1999, Vol. III at 513.  Petitioner argues that his trial counsel did not ask him any questions about this on re-direct, even though he contends that he had "informed trial counsel of the context of that statement; namely, that he was not seeking leniency, but was simply indicating that the conversation was fruitless, since even if Petitioner had been involved, the officer clearly would not help him, but would simply arrest him." Memorandum of Law in Support of Petition at 28.   According to petitioner, the jury was left with the impression that he had sought leniency from the police, which "undermined his assertion of innocence."  Id. at 28-29.

Assuming that petitioner could point to evidence in the record supporting his assertion that he gave trial counsel an explanation of why he inquired of the detective "what would [he] be able to do" if petitioner had been "involved" with Kacee, counsel's decision not to delve further into the issue was – once again – presumably a strategic one.  Petitioner's admitted question to the detective could obviously have been interpreted in a number of ways, and counsel could have believed that exploring petitioner's motivations on re-direct would have given the prosecutor the

opportunity to re-examine petitioner further on the subject during re-cross-examination. Moreover, on re-direct counsel wisely chose instead to ask petitioner a number of questions instead about other statements he made to the detective – statements which were far more favorable to petitioner's position.[8]  In addition, given petitioner's contention that he did provide counsel with an explanation for his question to the detective, it does not appear to be the case that counsel proceeded with her re-direct based on insufficient information; instead, it appears that she had the necessary information yet nonetheless affirmatively decided not to pursue further examination of her client on the subject.

Decisions such as which questions to ask a particular witness generally fall within counsel's discretion and therefore are a matter of trial strategy.  Such matters of strategy do not raise questions of constitutional proportion.  United States v. Hughes  635 F.2d 449, 452-453 (5th Cir. 1981).  The court therefore concludes that petitioner's claim based on his counsel's alleged failure to sufficiently "rehabilitate" his testimony on re-direct examination does not provide a basis for habeas relief.


### 2.  **Appellate counsel**

A criminal defendant's constitutional right to the effective assistance of counsel extends to his first appeal as of right.  Evitts v. Lucey,  469 U.S. 387, 396-397 (1985); Mapes v. Tate,

---

[8]For example, petitioner's counsel asked him on re-direct whether petitioner had explained to the detective (1) that Kacee had made the same allegations before; (2) that petitioner believed that Kacee was resurrecting the allegations because the divorce proceedings between him and Rhonda were becoming "pretty ugly"; and (3) that Kacee was "spoiled" and "did what she wanted when she wanted" after she had made the earlier allegations against him. Transcript of Jury Trial, July 8, 1999, Vol. III at 516-517.

388 F.3d 187, 191 (6th Cir. 2004).  Here, petitioner claims that his appellate counsel was

ineffective for failing to raise a claim of ineffective assistance of trial counsel, for failing to raise

issues on appeal regarding comments made by the judge during the trial and by members of the

venire panel during voir dire, and for failing to request oral argument.

　　　　As noted above, appellate counsel's performance is judged under the same standard for

evaluating trial counsel's performance found in Strickland:  it must be shown both that counsel's

performance was deficient and that the deficient performance prejudiced the defense so as to

render the trial unfair and the result unreliable.  Mapes, 388 F.3d at 191.  The scrutiny of

appellate counsel's performance is highly deferential, and "counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." Strickland, 466 U.S. at 690.  Nevertheless, a court deciding a claim of

actual ineffectiveness of counsel on "must judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Id.

However, the evaluation of prejudice, unlike the evaluation of counsel's performance, may be

made with the benefit of hindsight.  See Lockhart v. Fretwell, 506 U.S. 364, 371-372 (1993).

　　　　In attempting to demonstrate that his appellate counsel's failure to raise a particular issue

on appeal constitutes deficient performance, it is not sufficient for petitioner to show merely that

counsel omitted a nonfrivolous argument.  The Supreme Court has never held that a defendant

has a constitutional right to have counsel raise every nonfrivolous issue on appeal if counsel, as a

matter of professional judgment, decides not to present those points.  Jones v. Barnes, 463 U.S.

745, 751 (1983); Bowen v. Foltz, 763 F.2d 191, 194 n.4 (6th Cir. 1985).  As the Supreme Court

has observed, "[e]xperienced advocates since time beyond memory have emphasized the

33

importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones, 463 U.S. at 751-752. "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." Id. at 752-753. "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000).

Although it is still possible to bring an ineffective assistance claim based on appellate counsel's failure to raise a issue, it is difficult to demonstrate that counsel was incompetent. Id. Moreover, even if a habeas petitioner does succeed in demonstrating that appellate counsel was incompetent in failing to raise a particular issue on appeal, he must still establish that there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. Howard v. Bouchard, 405 F.3d 459, 485 (6th Cir. 2005). The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" Willis v. Smith, 351 F.3d 741, 745 (6th Cir. 2003) (quoting Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)).

In this case, a claim of ineffective assistance of trial counsel would not have changed the result of petitioner's direct appeal, because, as the court has found above, petitioner did not have a valid ineffective assistance claim. Because petitioner therefore cannot establish prejudice, he cannot meet the second component of the *Strickland* standard.

Similarly, appellate counsel's failure to raise issues on appeal regarding jury selection and the allegedly improper judicial comments – issues which were not meritorious, as noted in

Part III.B above – has not resulted in prejudice to petitioner.   Because neither of these issues was preserved at trial, they would likely have been reviewed only for plain error, and there is no reasonable probability that raising these issues would have changed the result of the appeal. Therefore, petitioner cannot satisfy the second component of the *Strickland* standard with respect to these claims.

Petitioner's final claim that appellate counsel rendered ineffective assistance is based on the attorney's failure to request oral argument on appeal, even though the appellate brief was timely filed.  Petitioner argues that the "**minimum** standards for assigned appellate counsel in Michigan require that counsel request and appear at oral argument." Memorandum of Law in Support of Petition at 30 (emphasis by petitioner).  In support of this particular argument, petitioner cites to the case of In re Attorney Fees of Mullkoff, 438 N.W.2d 878, 880 (Mich. Ct. App. 1989).

Mullkoff was an appeal from an award of attorney's fees and expenses.  In that case, the court ruled that the trial court had abused its discretion in failing to award attorney fees and expenses to counsel for, among other things, attending oral argument in the Court of Appeals. In so ruling, the court noted that "minimum standards for indigent criminal appellate defense services" adopted by the state's Supreme Court provided that counsel "should request and appear for oral argument."  Id.  The court therefore held that the trial judge had erred in disallowing compensation for counsel's attendance at appellate oral argument.  Id. at 881.  In so holding, the court noted that "[a]lthough oral argument may not be necessary in every case, appellate strategy is the province of counsel, not the court."  Id. (footnote omitted).

Even assuming that petitioner was represented by assigned counsel on appeal, and

35

assuming that the Michigan Court of Appeals would have granted him oral argument had counsel requested it, see M.C.R. 7.214(A) and 7.214(E) (addressing requests for argument and decisions without oral argument), Mullkoff does not compel relief here.   Even if appellate counsel's performance fell below an objective standard of reasonableness, petitioner must still demonstrate a reasonable probability that, but for counsel's alleged unprofessional conduct, the result of the proceedings would have been different.  Ivory, 509 F.3d at 294.  It is one thing to say – as does Mullkoff – that appointed counsel is entitled to compensation for appearing for attending appellate arguments.  However, it is entirely another thing to draw from Mullkoff a conclusion that a simple request for oral argument is reasonably likely to change the result of the appeal.[9]

Petitioner nowhere addresses what appellate counsel could have achieved through oral argument that he could not have achieved through timely-filed briefs.  Absent some indication of how oral argument would have affected the outcome of petitioner's appeal, it is not apparent how the failure to perform the mere act of putting the words "ORAL ARGUMENT REQUESTED" on the title page of a brief prejudiced petitioner.  Because petitioner cannot establish the prejudice element of the *Strickland* standard, his claim that appellate counsel was ineffective in failing to request oral argument cannot succeed.

### 3.  **Procedural Default**

Having found that neither trial counsel's performance nor his appellate counsel's

---

[9]In any event, Mullkoff is not a United States Supreme Court case, and petitioner has not cited any precedent of that court which supports his position.

performance prejudiced petitioner under the *Strickland* standards, the court thus concludes that neither of these claims establishes cause to excuse any procedural default by petitioner.  Given petitioner's failure to establish cause, the court need not address the prejudice element of the "cause and prejudice" test.  However, the court notes that petitioner's failure to establish prejudice under *Strickland* also obviates his claim of prejudice under that standard.  Howard, 405 F.3d at 485-486.

## IV

### Conclusion

For the reasons stated, the court will enter judgment denying the petition.


So ordered this 22nd day of September, 2008.



 /s/ Wendell A. Miles
Wendell A. Miles, Senior Judge